IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

OSCAR L. LANE                                                                                         PLAINTIFF

v.                                            No. 3:16-CV-00149-KGB-PSH

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                                            DEFENDANT

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Oscar Lane applied for social security disability benefits on April 17, 2013 with an alleged disability onset date of January 1, 2008. (R. at 67–68). After a hearing, the administrative law judge (ALJ) denied his application. (R. at 28). The Appeals Council denied Lane's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Lane has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

I.        **The Commissioner's Decision**

The ALJ found that Lane had the severe impairments of chronic obstructive pulmonary disease, osteoarthritis, and degenerative disk disease. (R. at 20). The ALJ then found that Lane had the residual functional capacity to perform light work except that he cannot engage in frequent bending, crouching, or climbing; can lift or carry no more than 20 pounds at a time and up to 10 pounds frequently; can stand/walk up to six hours in an eight-hour workday; and cannot be exposed to concentrated amounts of respiratory irritants, such as dust, fumes, strong odors, or extreme changes in temperature or humidity. (R. at 22). Having taken testimony from a vocational expert (VE), the ALJ determined that Lane could not return to past relevant work. (R. at 26). The ALJ also found that Lane had acquired transferable work skills from his past work as an automotive generator and solder repairer. (R. at 27). The ALJ found, with the VE's testimony, that Lane could perform jobs such as auto-self-service attendant, auto rental clerk, retail sales clerk, or membership solicitor. (R. at 27–28). Accordingly, the ALJ held that Lane was not disabled. (R. at 28).

II.  Summary of Medical Evidence

Lane sought treatment at Great River Medical Center between August 2008 and October 2010. (R. at 229–56). On September 10, 2008, Lane visited with complaints of shortness of breath. (R. at 254). He had an x-ray that identified only a possible lung nodule but was otherwise normal. (R. at 252). He had good air movement and his condition improved. (R. at 256). It was noted that he was a smoker. (R. at 250). He presented again on March 15, 2009 with complaints of shortness of breath. (R. at 240). He was discharged after treatment with Prednisone. (R. at 241). He once again presented on June 22, 2009 with complaints of shortness of breath and was discharged after treatment with medication. (R. at 234, 236). On October 5, 2010, he presented

once more after a motor vehicle accident. (R. at 229). He had complaints of lower back pain. (R. at 230).

On June 14, 2013, Donita Keown, M.D. performed a consultative examination on Lane. (R. at 214). Dr. Keown diagnosed COPD and chronic bronchitis, tobacco abuse, right knee degenerative joint disease, and lumbar degenerative change. (R. at 216). She noted reduced hip flexion due to back pain, mildly enlarged knee joints with flexion and extension of 130 and 0 degrees and minor crepitus of the right knee. (R. at 215). She also observed that Lane was slightly short of air during gait and station exercises but recovered quickly. (R. at 215). His lungs were clear to auscultation bilaterally without wheezes, rales, or rhonchi. (R. at 215). Dr. Keown opined that Lane could sit four to six hours in an eight-hour day, walk or stand four to six hours in and eight-hour day, occasionally lift 20 to 25 pounds and frequently lift 10 to 12 pounds. (R. at 216). She strongly suggested that he quit smoking and recommended that he avoid environments heavily polluted with pulmonary irritants including tobacco smoke. (R. at 216).

Lane had a pulmonary function study on January 10, 2014. (R. at 219–26). The administering physician noted good effort on Lane's part and that he was fatigued after the administration of Ventolin. (R. at 223). There was no physician's interpretation in the report. (R. at 223).

III.   Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925

(8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Lane presents two arguments. He first argues that the ALJ erred in ascribing transferable job skills to Lane due to a mischaracterization of his past relevant work. Lane also contends that the ALJ failed to perform a proper credibility determination.

Lane testified at the hearing that he had worked as a mechanic, cleaning cars, changing oil, and changing alternators and starters. (R. at 37). The ALJ questioned the VE about the classification of Lane's work, which the VE initially identified as an oil and lube tech (DOT No. 915.687-018). (R. at 48). The ALJ asked specifically if "the fact that he took out starters and alternators" changed the classification, and the VE responded affirmatively and identified automotive generator and solder repairer (DOT No. 721.281-010). (R. at 48). The VE testified that Lane had transferable skills, specifically organizational skills; communication skills, especially verbal; knowledge of tools; very good knowledge of the equipment used to repair parts of vehicles; and the ability to install and test. (R. at 48–49).

Lane argues that his testimony does not support the acquisition of these skills. He cites to *Bethel v. Colvin,* No. 13-CV-2044-WJM, 2014 WL 2932831, at *4 (D. Colo. June 30, 2014), where the District of Colorado reversed because a VE testified that a plaintiff had acquired transferable skills based only on the title of the occupation. This case is different, however. In *Bethel*, the ALJ had not taken testimony from the plaintiff regarding his job duties and questioned the VE based solely on the job titles. *Id.* In contrast, Lane testified as to his job duties, and the ALJ questioned the VE based on Lane's testimony. The undersigned cannot agree that the ALJ committed error in formulating the questions to the VE and relying on the VE's answers.

Lane further argues that the record does not support that he performed the job of automotive generator and solder repairer because he testified that he could neither read nor write. (R. at 35–36). As the ALJ observed, however, there is no objective support for this testimony in the record. (R. at 27). The record shows that Lane completed the tenth or eleventh grade. (R. at 35–36, 164). The record does reflect that Lane attended special education classes. (R. at 36, 164). Lane contends that the ALJ should have ordered a consultative mental examination to determine his capabilities. However, Lane did not claim mental impairments in his application for disability. (R. at 68). It is Lane's burden to prove his RFC. *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). The ALJ is only required to order additional consultative examinations where a critical issue is underdeveloped. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011). Nothing indicates that Lane's mental status was a critical issue requiring further development, and it is only at this juncture that Lane maintains he has any mental limitations. As such, the ALJ did not err in not ordering a consultative examination.

Finally, Lane argues that the ALJ failed to perform a proper credibility analysis. He contends that the ALJ's statement that he did not find Lane to be entirely credible does not rise to a full credibility analysis.

The Court defers to the ALJ's credibility determination when it is supported by good reason and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). The ALJ must consider "(1) the claimant's daily activities; (2) the duration and intensity of the pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions." *Miller v. Sullivan*, 953 F,2d 417, 420 (8th Cir. 1992) (*citing Polaski v. Heckler*, 739 F.2d 1320,

1322 (8th Cir. 1984). The ALJ need not specifically address each factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ did not simply state that he found Lane to be not entirely credible. He discussed the lack of treatment records relating to Lane's alleged disabling conditions, Lane's continued smoking despite medical advice to quit, and the lack of objective medical findings to support Lane's allegations. (R. at 25–26). Furthermore, the medical evidence of record supports the RFC assigned by the ALJ. The ALJ's credibility analysis was sufficient.

## IV. Recommended Disposition

The ALJ properly questioned the VE and relied on VE testimony in determining Lane's transferable skills and performed a proper credibility analysis. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 5th day of April, 2017.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE